## J. M. GUNNELS ET AL. V. N. I. CARTLEDGE ET AL.

Decided October 23, 1901.

**1.—School Land—Sale—Interest Payments.**

Upon school land sold by the State under Act of April 23, 1891 (Session Laws, page 180), interest was payable on the first day of April of each year; and when the purchaser sold his claim to another on the 15th of March, the latter assuming the payment of the balance due the State, and the seller reciting that all interest due to date had been paid, such purchaser could not permit a forfeiture for failure to pay the interest falling due on April 1st and plead same as a failure of consideration in defense against his notes given for deferred payments on the land.

**2.—Sale of School Land—Fraud—Assignee.**

Only the State could take advantage of fraudulent representations as to the character of the land by a purchaser of school land from it; a vendee of such purchaser could not defend against the payment of his notes for deferred purchase money on the ground that his vendor's claim was fraudulent as against the State.

**3.—School Land—Purchaser—Assignable Right.**

A purchaser of school land who has not acquired title by completing his payments, has nevertheless an interest assignable to another and capable of being the subject of purchase and sale.

Error from Tom Green. Tried below before Hon. J. W. Timmins.

Cartledge and wife sued J. M. and W. R. Gunnels on notes given for land, and recovered judgment from which plaintiffs appealed.

*Sims & Snodgrass,* for plaintiffs in error.

*West & Cochran,* for defendants in error.

COLLARD, ASSOCIATE JUSTICE.—This is an action filed April 20, 1899, by defendant in error N. I. Cartledge, joined by her husband E. Cartledge, against plaintiffs in error, J. M. Gunnels and W. R. Gunnels, on four promissory notes, each for the sum of $266.25, one due on or before November 1, 1893, one due on or before November 1, 1894, one November 1, 1895, and the last, November 1, 1896, executed by defendants to plaintiffs on the fifteenth day of March, 1893, bearing 10 per cent interest per annum from date, stipulating for 10 per cent attorney's fees if placed in the hands of an attorney for collection or if collected by suit, each reciting that it was given as part purchase money for certain 320 acres of land, half of section 6, in the name of Southern Pacific Railway Company, located about 3 1-2 miles south of Robert Lee, that day conveyed to defendants by E. Cartledge, each reciting that it was given to secure purchase money of the land and retaining vendor's lien thereon, and each stipulating that failure to pay the same when due or any installment of interest when due should mature all the notes. Prayer for amount due on the notes, interest, attorney's fees, and costs.

Defendants filed general and special exceptions to the petition, general

denial, and special answers; the statute of limitations of four years; that the notes were without consideration and void; that the contract of sale was executory, "fraudulent, and unauthorized; and that subsequent to the date of the deed and notes and prior to the 23d day of September, 1895, the title to the land described in plaintiffs' petition as security for the said four notes reverted to and became the property of the State of Texas, and was so declared by the Commissioner of the General Land Office of said State, and thereby became public domain." The answer then proceeds to show that thereafter the land was placed on the market as the law directs, at $1 per acre; that said reversion and forfeiture was. in no way the fault of the defendants or either of them, nor were they in any way responsible therefor, but said forfeiture was wholly and entirely caused by the said E. Cartledge, and that said Cartledge is wholly responsible for the same; that said deed was executed and delivered on the 15th day of March, 1893, and contained the following statement, to·wit: "Said land having been purchased from the State by E. Cartledge at $2 per acre, the first payment and all interest payments up to date· having been paid by E. Cartledge;" that said statement is false and untrue in this, that all interest and payments due up to the said 15th day of March, 1893, had not been paid by said E. Cartledge or anyone· else, and have ·never yet been paid; that on the 15th day of March, 1893, one annual installment of interest was due and unpaid on said land, and had been past due for two months, and the said Cartledge well knew of said defect at the time he executed and delivered said deed, and fraudulently concealed the same from these defendants, with intent to deceive and defraud these defendants. The answer then proceeds to show that on the 23d day of September, 1895, defendant J. M. Gunnels, in order to protect himself in the use and occupancy of the land, was compelled to purchase the land from the State and did purchase the same, and so acquired the State's title thereto, and has improved and occupied it ever since under his purchase; that the notes sued on are without consideration; that after the executory contract for the sale of the land by Cartledge to defendants they offered to rescind the contract, and he, Cartledge, refused so to do. Defendants pleaded also the statute of three years' limitation by possession of the land under title from the State. That part of the answer impeaching the consideration of the notes is sworn to.

Plaintiffs by supplemental petition deny generally the averments of the answer,' and specially aver that if the land was forfeited it was. because of the failure of defendants to pay the State the balance .of the purchase money due under the Cartledge contract, and the forfeiture was not by any fault or default of said Cartledge or plaintiff. Plaintiff also sets up that if the Cartledge purchase was forfeited, it was long after the conveyance by E. Cartledge to defendants; and that it, the forfeiture, was purposely brought about by defendants with the intent to repurchase the land from the Stte at a price less than that stated in the Cartledge contract of purchase, and with the intent to defraud the

State of a portion of the original purchase price, and to fraudulently defeat their obligation to plaintiff to pay the notes.

The case was tried without a jury, and judgment was rendered by the court adjudging that the two notes sued on first maturing were barred by the statute of limitations, but awarded judgment for plaintiffs for the full amount of the other two notes, principal, interest, and attorney's fees, foreclosed vendor's lien to secure the same, and ordered sale of the land, etc., from which judgment defendants have appealed.

The petition and answer shows that N. I. Cartledge was the wife of E. Cartledge.

*Findings of Fact.*—We find the facts proven on the trial as follows:

1. The notes sued on, as described in the petition, were in evidence.

2. Conveyance of date 15th March, 1893, by Cartledge to J. M. and W. R. Gunnels of the land for which the notes were given, for consideration expressed as the notes sued on and $10 cash, and the assumption by the Gunnels of the obligations due the State by Cartledge, the conveyance reciting said land having been purchased of the State by E. Cartledge in 1884, at $2 per acre, the first payment and all interest due to date having been paid. The deed retains vendor's lien on the land to secure payment of the notes, and has a special warranty clause against all persons claiming by, through, or under the vendor.

3. The State Treasurer's records were in evidence by plaintiff, showing receipt of payments by Cartledge on the land, principal, last payment September 12, 1892, and interest credited, last payment to January 1, 1892. The Land Office certificate shows that the above was the last receipt of Treasurer filed in the Land Office. State Treasurer's receipt, of date September 12, 1892, in evidence, shows payment by Cartledge on the land of $61.80 interest to January 1, 1892, and 26 cents principal, the payment made prior to August 2, 1892.

4. Certificate of the Commissioner of the General Land Office of date 2d December, 1899, states that the records of the office show that the receipt of the Treasurer of date September 12, 1892, is the latest Treasurer's receipt in the Carledge file, which receipt was filed in Land Office September 14, 1892.

5. The Cartledge application to purchase the land was filed in secretary's office November 21, 1883.,

6. It was admitted on the trial that at the date of the Cartledge purchase the land was situated in Tom Green County; that the purchase was made in the city of Austin, Travis County, and that it was made under the act of the Eighteenth Legislature, approved April 12, 1883; that the application was in all things regular, defendants claiming the land was misdescribed as claimed in bill of exceptions.

*Opinion.*—1. Plaintiffs in error claimed no credit or deduction from the amount due on the notes by reason of the alleged nonpayment of

interest due at the date of the sale by Cartledge, but insist by pleading that there was a forfeiture of the Cartledge purchase for that cause. It does not appear that defendants paid the interest so due on the Cartledge obligation. But defendants offered to show by copies of records of the State Treasurer's Office what payments had been made by Cartledge prior to the deed to Gunnels, up to January 1, 1892, and offered file marks of the Commissioner of the General Land Office in the Cartledge purchase, duly certified, as follows: "Forfeited for nonpayment of interest for the year ending June 1, 1893," which forfeiture seems to have occurred May 28, 1895, as shown by file mark in red ink thus "5.28.95." The court excluded the proffered evidence.

2. Defendants offered in evidence certified copy of an application and obligation of J. M. Gunnels, of date September 19, 1895, to purchase the land sued for as an actual settler at $1 per acre, together with State Treasurer's receipt showing payment of first installment of purchase money and interest for the years ending November 1, 1897, 1898, and 1899, and award of General Land Office to J. M. Gunnels, selling the land to him, giving date of sale on September 23, 1895; and also certificate of chief clerk of the General Land Office, acting commissioner, showing that the land was sold to J. M. Gunnels as an actual settler September 23, 1895, under act of the Legislature approved April 16, 1895. The court excluded the evidence.

The bills of exception, although general and indefinite, in that they do not state the grounds of objection to the evidence, are sufficient in order to be considered under the ruling of the Supreme Court in Walker v. Leonard, 89 Texas; but in the view that we take of the record, the evidence was not admissible, or if it had been admitted, should not have affected the disposition of the case as made by the trial court. In the deed of conveyance from Cartledge to Gunnels, which was executed on the 15th of March, 1893, as a part of the consideration for the purchase of the land, Gunnels assumed the payment of the balance due the State by Cartledge, followed by a recital of all interest due to date having been paid. The law in force at the time that this conveyance was made was the act of April 23, 1891, Session Laws, page 180, wherein it is provided that the interest due the State upon obligations of the character assumed by Gunnels may be payable on the 1st day of April of each year. Such is the effect of section 11 of this act. The evidence, beyond dispute, shows that Cartledge paid all interest due the State to January 1, 1892. Under the law as above stated, the next payment of interest would be due April, 1893, and before this time the Commissioner of the General Land Office would not have authority to declare a forfeiture. So it follows that at the time the contract between Cartledge and Gunnels was entered into the interest was not due. The Gunnelses at that time having assumed to pay the amount owing the State, would not be permitted to suffer a forfeiture to occur and then urge it in order to relieve themselves of the obligation that they had executed to Cartledge. If there was any amount of interest that might

have been chargeable to Cartledge after the contract between him and the Gunnelses was entered into, and the plaintiffs in error desired to recover this amount, they should have pleaded it, which was not done.

3. Defendants tendered as evidence a certified copy of the application of E. Cartledge to purchase the land, which describes it as "all without water and without timber except scattering mesquite brush, suitable only for grazing purposes," describing soil and grass, "country is broken with canyons running back from the river in which is some cedar timber." And then defendants offered to prove by defendants J. M. and W. R. Gunnels and one R. B. Higgins, that the description in the Cartledge application to purchase was untrue and that the land was at the date of the application agricultural land. The oral testimony was objected to as being inadmissible under the pleadings, which objection was sustained by the court, defendants reserving a bill of exceptions.

We find no error in the ruling of the court upon the question. A careful examination of the answer of Gunnels does not show any averments that the Cartledge purchase was *forfeited,* nor that the failure to properly describe the land was the cause of the reversion of the land to the State attempted to be established by the excluded testimony offered by defendants. No one but the State can make available the misdescription contended for; and the mere fact that the land was misdescribed in the original application to purchase by Cartledge, would not of itself deprive plaintiff of the right to recover on the notes executed by defendant Gunnels for the land. If it had been shown that the State forfeited the Cartledge claim because of the misdescription, the matter of misdescription would be important. Otherwise it would be immaterial. No attempt was made to show a forfeiture upon that ground, and in fact there was none for that cause. Hence we can not say that the fact constitutes any defense to the action founded on the notes. The record shows that defendants undertook to carry out the Cartledge contract to pay $2 per acre for the land, and that they allowed that purchase to fail and purchased the same land from the State at $1 per acre, thus saving $1 per acre in acquiring the land. If Gunnels had paid the interest for the nonpayment of which it is alleged the forfeiture occurred, a rebate for the amount so paid should have been allowed on the contract price with plaintiff; but no such relief is sought by defendants and none such can be demanded. Gunnels simply abandoned the original purchase and allowed the land to revert to the State, and then repurchased from the State for a less sum than his assumed obligation called for. The pleadings show this.

4. Assignments of error relating to the right to contract with reference to the land, the title to which was in the State, are disposed of adversely to appellants. Cartledge had a right in the land by his contract with the State, which might have matured into full title by full performance of that contract by Gunnels, whose duty it was to perform. Plaintiff had an assignable right under the contract with the State

which was transferred to Gunnels. This right Gunnels purchased. The land was not public domain in the sense that it could not become the subject of contract by the parties. Cartledge had a claim upon it by contract with the State, and that claim could be conveyed by sale, as any other interest in property. By the sale to Gunnels, the latter succeeded to the rights of Cartledge and became bound to perform his obligations to the State to secure final and full title to the property—the State's title.

Finding no error on the trial in the lower court, the judgment is affirmed.

*Affirmed.*

Writ of error refused.